1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 3  Evan Ratcliff, | Case No.: 2:21-cv-00298-APG-BNW |
| 4       Plaintiff | **Order Granting Motion for Leave to File First Amended Complaint, Screening First Amended Complaint, and Granting Application to Proceed in Forma Pauperis** |
| 5  v. | |
| 6  J. Howell, et al., | |
| 7       Defendants | (ECF Nos. 1, 10). |
| 8 | |

9      Plaintiff Evan Ratcliff brings this civil-rights action under 42 U.S.C. § 1983 to redress

10  constitutional violations that he claims he suffered while incarcerated at Southern Desert

11  Correctional Center.[1]  On August 5, 2021, I screened Ratcliff's complaint, allowing him to

12  proceed on a Fourteenth Amendment equal-protection claim against defendants J. Howell and G.

13  Piccinni.[2]  I also stayed the case to allow Ratcliff and the defendants an opportunity to settle their

14  dispute before the $350 filing fee needed to be paid.[3]  The parties did not reach a settlement.[4]

15      After the Attorney General's office filed its status report, Ratcliff moved for leave to file

16  a first amended complaint.[5]  Ratcliff's proposed amended pleading adds a Fourteenth

17  Amendment due-process claim against Howell and Piccinni, increases the amount requested for

18  compensatory relief, eliminates the prayer for nominal damages, and adds a prayer for punitive

19

20

---

21  [1] ECF No. 4.

[2] ECF No. 3.

22  [3] *Id.* at 6.

23  [4] *See* ECF No. 9.

[5] ECF No. 10.

1  damages.[6]  Because Ratcliff's proposed amendment is not entirely futile, I grant his motion for

2  leave to amend and screen his first amended complaint under 28 U.S.C. § 1915A.  Based on the

3  financial information provided, I find that Ratcliff is unable to prepay the full filing fee in this

4  matter.[7]  So I grant his application for that relief.

5  **I.      MOTION FOR LEAVE TO AMEND**

6           Ratcliff moves for leave to amend, arguing that no answer has been filed, no statute of

7  limitations has expired, and he exhausted his administrative remedies in 2020.[8]  The defendants

8  respond that under FRCP 15(a)(2), a party may amend his pleading with the opposing party's

9  consent or with leave from the court.[9]  They point out that leave should be not be given if

10 amendment would be futile, which, they argue, is the case here because Ratcliff's official-

11 capacity claims for damages are prohibited by law and his due-process claim is conclusory.[10]

12          "Generally, Rule 15 advises the court that 'leave shall be freely given when justice so

13 requires."[11]  The Ninth Circuit instructs that "[t]his policy is to be applied with extreme

14 liberality."[12]  When deciding whether to grant leave to amend, the Supreme Court has offered

15 several factors a district court should consider, including whether amendment would be futile.[13]

16

17

18 [6] ECF Nos. 10, 10-1.

19 [7] *See* ECF No. 1.

20 [8] ECF No. 10 at 1.
   [9] ECF No. 11 at 2.

21 [10] *Id.*at 2–4.

22 [11] *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)(2)).

23 [12] *Id.* (internal quotation omitted).
   [13] *Id.* at 1052 (*Forman v. Davis*, 371 U.S. 178, 182 (1962)).

As I discuss in further detail below, parts of Ratcliff's proposed amended complaint are futile, like his official-capacity suit for damages. But he can seek punitive damages on his equal-protection claim against the defendants in their individual capacities even if he is unable to show a compensable injury.[14] And it is not yet clear that Ratcliff cannot state a colorable due-process claim. So I grant Ratcliff's motion for leave to amend and screen his first amended complaint (FAC) under 28 U.S.C. § 1915A.

## II.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[15] The court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[16] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[17]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[18] In making

---

[14] *See Smith v. Wade*, 461 U.S. 30, 35 (1983).

[15] *See* 28 U.S.C. § 1915A(a).

[16] *See id.* at § 1915A(b)(1)(2).

[17] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[18] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

1  this determination, the court takes all allegations of material fact as true and construes them in

2  the light most favorable to the plaintiff.[19]   Allegations of a *pro se* complainant are held to less

3  stringent standards than formal pleadings drafted by lawyers,[20] but a plaintiff must provide more

4  than mere labels and conclusions.[21]  "While legal conclusions can provide the framework of a

5  complaint, they must be supported with factual allegations."[22] "Determining whether a complaint

6  states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court

7  to draw on its judicial experience and common sense."[23]

8  **III.    SCREENING OF FAC**

9       Ratcliff sues J. Howell and G. Piccinni, in their official and individual capacities, for

10  events that allegedly occurred while he was incarcerated at Southern Desert Correctional Center

11  (SDCC).[24]  He brings two claims and seeks monetary and injunctive relief.

12       Ratcliff alleges that he was placed in administrative segregation from October 23 to

13  December 24, 2019, because a threat had been made on his life.[25]  He did not deem the threat

14  credible, but understood the procedure was to maintain his safety.  Prisoners in disciplinary

15  segregation at SDCC are not allowed contact visits and are prohibited from obtaining certain

16  foods, appliances, and hygiene products from the canteen as punishment for their institutional

17  violations.  But those conditions do not exist for prisoners who are in administrative segregation.

18

19  [19] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

20  [20] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

21  [21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

   [22] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

22  [23] *Id.*

23  [24] ECF No. 10-1 at 1–2.

   [25] *Id.* at 4.

Although Ratcliff had done nothing wrong and was in administrative segregation, not disciplinary segregation, he was denied contact visits and prohibited from obtaining certain items from the canteen.  Other prisoners in administrative segregation were allowed to order items from the canteen.  Some of those prisoners obtained approval by writing a request kite to the defendants.  Others were simply able to order the items without permission.

Ratcliff sought approval from the defendants to order items from the canteen because he was in administrative segregation.[26]  His requests were unanswered or denied.  No legitimate penological reason was given for why he was being treated differently from other prisoners in administrative segregation.  Ratcliff filed kites and grievances asking the defendants to change their policies and practices, but they refused to do so.

Based on these allegations, Ratcliff contends that the defendants violated his Fourteenth Amendment rights to equal protection and due process.  I construe the FAC as alleging claims based on those two different theories of liability.

### A.    Ratcliff cannot pursue official-capacity claims for damages

Ratcliff sues Howell and Piccinni in their official and individual capacities and he seeks both monetary and injunctive relief.  State officials like these defendants who are sued in their official capacities for damages are not persons for § 1983's purposes.[27]  "State officers are subject to § 1983 liability for damages in their personal capacities, however, even when the

---

[26] *Id.* at 5.

[27] *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n.24 (1997) (explaining that "[s]tate officers in their official capacities, like States themselves, are not amenable to sue for damages under § 1983").

conduct in question relates to their official duties."[28]  I therefore dismiss with prejudice Ratcliff's official-capacity claims for damages against the defendants because amendment would be futile.

**B.      Fourteenth Amendment Equal Protection Clause**

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  A plaintiff can also state an equal protection claim if he alleges facts demonstrating that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Ratcliff alleges he was in administrative segregation, not disciplinary segregation.  He also alleges that other prisoners in administrative segregation were allowed contact visits and to order items from the canteen.  But Ratcliff was not allowed contact visits or the ability to purchase items from the canteen.  And when Ratcliff sought to be treated like the other prisoners in administrative segregation, the defendants ignored or denied his requests.

The allegations are enough to state a colorable equal protection claim that Ratcliff was singled out for different treatment among the prisoners in administrative segregation.  The allegations are also enough for screening purposes to state that Howell and Piccinni personally participated in the alleged deprivation.  When Ratcliff raised the issue with the defendants, they denied or ignored his kites and grievances.  It can be inferred that they failed to act to prevent Ratcliff's continued disparate treatment.

---

[28] *Id.*

6

### C.        Fourteenth Amendment Procedural Due Process

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id*.  "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id*.  A prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.  Prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9.  An inmate has the right to notice and the right to be heard. *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).  The Ninth Circuit has held that where the prisoner alleges material differences between the conditions in general population and administrative segregation, the prisoner's procedural due process claim should not be dismissed on the pleadings. *See Jackson v. Carey*, 353 F.3d 750, 755–57 (9th Cir. 2003).

Based on the allegations, Ratcliff was placed in administrative segregation because a threat was made against his life.  The threat came via confidential information.  Ratcliff did not

deem the threat credible but "understands that safety and security is very important, and that a[n] investigation had to be conducted."[29]  But Ratcliff doesn't allege that he was placed in administrative segregation without a proper hearing.  Ratcliff also does not allege that his placement was not periodically reviewed or how long he was placed there.  And he pleads no facts to connect Howell and Piccinni to any decision to place or keep him in administrative segregation.

Ratcliff also does not allege that there are material differences between the conditions in administrative segregation and the general population.  He instead alleges that there are material differences between the conditions in administrative segregation and disciplinary segregation. And he was placed in the former group but treated like he was in the latter.  These allegations are not enough to state a colorable claim against Howell or Piccinni under the Fourteenth Amendment's Due Process Clause.  So I dismiss this claim without prejudice.

**IV.    CONCLUSION**

I therefore order that the application to proceed in forma pauperis **(ECF No. 1) is granted**.  Ratcliff is not required to pay an initial installment of the filing fee.  If this action is dismissed, the full filing fee must still be paid under 28 U.S.C. § 1915(b)(2).

I order that Ratcliff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor.

I order that, under 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act, the Nevada Department of Corrections will forward payments from **Evan Ratcliff, #96345's** account to the Clerk of the United States District Court, District of Nevada, 20% of the preceding

---

[29] ECF No. 10-1 at 6.

month's deposits (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action.

I order that Ratcliff's motion for leave to file a first amended complaint **(ECF No. 10) is granted.**

I order that:

- The claim for discrimination under the Fourteenth Amendment's Equal Protection Clause can proceed against J. Howell and G. Piccinni; and

- The claim under the Fourteenth Amendment's Due Process Clause is dismissed without prejudice.

I order that Ratcliff's official-capacity claims for damages against Howell and Piccinni are dismissed with prejudice because amendment would be futile.

I order that, subject to the findings in this order, within 21 days of entry of this order, the Attorney General's Office shall file a notice advising the court and Ratcliff of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal.  As to any of the named defendants for whom the Attorney General's Office cannot accept service, the Attorney General's Office shall file, under seal, but shall not serve Ratcliff the last known addresses of those defendants for whom it has such information.  If the last known address of the defendants is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical addresses.

If service cannot be accepted for any of the named defendants, Ratcliff shall file a motion identifying the unserved defendants, requesting issuance of a summons, and specifying a full name and address for the defendants.  For the defendants as to whom the Attorney General's

Office has not provided last-known-address information, Ratcliff shall provide the full name and address for the defendants.

If the Attorney General's Office accepts service of process for any named defendants, those defendants shall file and serve an answer or other response to the first amended complaint (ECF No. 10-1) within 60 days from the entry of this order.

For any named defendant for whom the Attorney General's Office does not accept service, service of the First Amended Complaint must be accomplished within 90 days of the entry of this order.

Ratcliff shall serve upon the defendants or, if an appearance has been entered by counsel, upon their attorney, a copy of every pleading, motion or other document submitted for consideration by the court. Ratcliff shall include with the original document submitted for filing a certificate stating the date that a true and correct copy of the document was mailed or electronically filed to the defendants or their counsel. If counsel has entered a notice of appearance, Ratcliff shall direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein. The court may disregard any document received by a district judge or magistrate judge which has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk which fails to include a certificate showing proper service.

Finally, I direct the Clerk of the Court to:

- File the first amended complaint (ECF No. 10-1) and send Ratcliff a courtesy copy;

- Electronically serve a copy of this order and a copy of Ratcliff's first amended complaint (ECF No. 10-1) on the Office of the Attorney General of the State of

Nevada by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service; and

- Send a copy of this order to the Finance Division of the Clerk's Office and to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.

Dated: March 31, 2022

_____
U.S. District Judge